502 F.2d 306
 PAAC as a Commission and Individually et al.
v.
Frank L. RIZZO, Mayor of the City of Philadelphia and as an
individual, et al.(D.C. Civil No. 73-957)
CITY OF PHILADELPHIA
v.
Melvin L. HARDY and Isaiah Crippins. (D.C. Civil No. 73-990)
 No. 73-1914.
 United States Court of Appeals, Third Circuit.
 Argued April 2, 1974.
Decided June 14, 1974.
 
 Donald E. Matusow, S. Gerald Litvin, Philadelphia, Pa., for appellants PAAC and Melvin Hardy.
 John Mattioni, Deputy City Solicitor, Martin Weinberg, City Solicitor, Philadelphia, Pa., for appellees.
 Before VAN DUSEN, WEIS and GARTH, Circuit Judges.
 OPINION OF THE COURT GARTH, Circuit Judge.
 
 
 1
 We are called upon to resolve a conflict between the Mayor of Philadelphia, the Honorable Frank Rizzo, and the Philadelphia Anti-Poverty Action Commission ('PAAC'). For reasons other than those articulated by the district court,[1] we conclude that it was proper for the court to refuse the relief sought against Mayor Rizzo.
 
 
 2
 Melvin Hardy (a former Executive Director of PAAC), Isaiah Crippins (a former General Counsel of PAAC), and PAAC commenced this action in the District Court for the Eastern District of Pennsylvania on April 27, 1973. Their complaint includes a variety of claims concerning the alleged interference of Mayor Rizzo with the functioning of the anti-poverty agency. By far the most prominent of these claims is the charge that the Mayor violated federal law by removing Melvin Hardy as the Executive Director of PAAC and by refusing to renew Mr. Crippins' contract as General Counsel. Less precise, but still present in the complaint, are charges that: (1) the Mayor illegally blocked appointments to PAAC made by its Executive Director; (2) the Mayor appointed persons to the PAAC Board illegally; (3) the Mayor convened PAAC meetings illegally; and (4) the Mayor defamed each of the plaintiffs. The complaint seeks declaratory and injunctive relief, as well as compensatory and punitive damages.
 
 
 3
 Four days after the above action was commenced, the City of Philadelphia instituted an action in state court against Hardy and Crippins, seeking to restrain the defendants from exercising their duties as Executive Director and General Counsel of PAAC.[2] On May 3, 1973, Melvin Hardy and Isaiah Crippins removed the City's action to the District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. 1441. Perceiving a close similarity between the two actions, the district court then consolidated the original action brought by PAAC, Hardy and Crippins (District Court No. 73-957) with the City's removed action (District Court No. 73-990). On May 10, 1973, the court conducted a one day hearing on the merits of the consolidated case.
 
 
 4
 After the hearing, the City moved for dismissal of No. 73-957 and for remand of No. 73-990 on the grounds of lack of subject matter jurisdiction. These motions were denied sub silentio by the district court. In a memorandum opinion, the district court found that:
 
 
 5
 (1) subject matter jurisdiction exists (pursuant to 28 U.S.C. 1331) for the district court to consider all matters raised in the consolidated actions; and
 
 
 6
 (2) federal law permits the Mayor to remove PAAC's Executive Director and to refuse to renew the contract of PAAC's General Counsel.
 
 
 7
 With regard to the peripheral matters raised in PAAC's original complaint, the Court stated:
 
 
 8
 We have not considered the myriad of other allegations and issues raised in the pleadings for the following reasons: (a) no evidence was presented at the hearing in connection therewith; (b) these matters were not briefed by the parties; and (c) in view of the issues decided herein, the other allegations and issues raised in the pleadings now appear moot.
 
 
 9
 Judgment was thereupon entered in favor of the defendants in No. 73-957 and in favor of the plaintiff in No. 73-990. PAAC and Hardy appeal pursuant to 28 U.S.C. 1291.[3]
 
 I. Background
 
 10
 To understand the district court's primary conclusions, it is necessary to trace briefly the history of relevant anti-poverty legislation. As part of the Economic Opportunity Act of 1964, Congress established a Community Action Program. This Program encouraged the development of local agencies to provide multiple services to impoverished communities. Originally, the Program envisioned as a goal the 'maximum feasible' participation of the poor in the development of Community Action Programs. By 1967, however, Congress recognized that the Community Action Program could not succeed without the support of locally elected officials. See 1967 U.S. Code, Congressional & Administrative News at 2448-49 (excerpted from House Report No. 866, 90th Cong., 1st Sess. 1967).
 
 
 11
 On December 23, 1967, Congress enacted the Green Amendments to the Economic Opportunity Act of 1964. These Amendments gave flexibility to the Community Action Program, permitting localities a choice in the type of 'community action agency' that would qualify for federal funding. Under the Green Amendments, the agency may either be a 'State or political subdivision of a State (having elected or duly appointed governing officials), or a combination of such political subdivisions' or it may be a 'public or private non-profit agency or organization which has been designated by a State or such a political subdivision or combination of such subdivisions.' 42 U.S.C. 2790(a). The former administers its program through a community action board,[4] while the latter administers its program through a governing board. 42 U.S.C. 2791(a).[5]
 
 
 12
 The Economic Opportunity Act is somewhat imprecise with regard to the distinctions between the two types of boards. A governing board has the power to 'appoint persons to senior staff positions, to determine major personnel, fiscal, and program policies, to approve overall program plans and priorities, and to assure compliance with conditions of and approve proposals for financial assistance under this subchapter.' 42 U.S.C. 2791(e). The parallel powers of a community action board, on the other hand, are not made explicit by the statute. The Office of Economic Opportunity, however, has explained that in jurisdictions with community action boards, the 'governing officials'[6] will exercise the same powers that governing boards exercise, unless the officials delegate these powers to the community action boards. OEO Community Action Program Memorandum No. 81 at 5.
 
 
 13
 In determining whether PAAC or Mayor Rizzo had the authority to remove Hardy, the district court focused upon the fact that the appointive powers of community action agencies differ, depending upon whether the agency is administered by a governing board (lodging the appointive powers in the board itself) or by a community action board (lodging the appointive powers in governing officials). The court thus posed as determinative the issue as to whether PAAC 'is a political subdivision of the City of Philadelphia administered by a 'community action board' or whether it is a public or private non-private agency administered by a 'governing board."
 
 
 14
 To resolve this issue, the district court examined the history of the Philadephia Anti-Poverty Action Commission. As the court found, PAAC was on February 22, 1965 by the Executive Order of former Mayor James H. Tate.[7] According to the uncontradicted testimony of appellant's witnesses, PAAC was (from 1965 to 1967) the only community action institution in the country that existed solely by virtue of an Executive Order. To mollify demands from Washington, a blue ribbon panel was formed to develop permanent legislation. As a result of the panel's efforts, the Philadelphia City Council adopted Bill No. 2846 on December 27, 1967. This Ordinance, appearing as Title 21-800 of the Philadelphia Code, provides, in pertinent part, that:
 
 
 15
 (1) Creation of Commission. The Philadelphia Anti-Poverty Action Commission is hereby created. It shall be composed of an uneven number of members, not less than 31 nor more than 45 in number. All of the members of the Commission shall serve without compensation. The initial number of members of the Commission shall be 38 members and there shall be no change in the number of members of the Commission at any time unless two-thirds of the members appointed to the Board approve the change in membership. The members of the Commission shall select a chairman from among themselves. The term for which any member of the Commission shall serve shall be for a period of one year and until their successors are appointed and qualify.
 
 
 16
 (2) Appointment of Members. The Members of the Commission shall be appointed by the Mayor. (The ordinance then recommends that the Mayor appoint specific officials as members.)
 
 
 17
 (3) The Mayor shall select an Executive Director from among a panel of 3 persons whose names are submitted to the Mayor by the Commission. The Mayor shall be at liberty to request the Commission to present to the Mayor additional panels of 3 persons from which he may select an Executive Director. The request of the Mayor for additional panels shall not preclude him from selecting a name from among the prior panels.
 
 
 18
 (5) Powers and Duties. The Commission shall have the following powers and duties:
 
 
 19
 (a) To conduct, administer and coordinate Federal anti-poverty programs in Philadelphia;
 
 
 20
 (b) To mobilize the resources of the City of Philadelphia and its residents to combat poverty through a community action program;
 
 
 21
 (c) To mobilize and utilize resources, public and private, in an attack on poverty;
 
 
 22
 (d) To provide services, assistance and other activities of sufficient scope and size to give promise of progress through elimination of poverty or a cause or causes of poverty through developing employment opportunities, improving human performance, motivation, productivity or bettering conditions under which people live, learn and work;
 
 
 23
 (e) To carry out a community action program which is developed, conducted and administered with the maximum feasible participation of residents of the areas and members of the groups served;
 
 
 24
 (f) To cooperate with federal, state and local governments and their agencies and representatives in every way possible in the conduct, administration and coordination of a community action program;
 
 
 25
 (g) To act as an agency of the City of Philadelphia for any and all of the purposes set forth herein; and
 
 
 26
 (h) To receive, expend and account for funds, property and services supplied by federal, state or local governments, or by others, and in every way possible to further the purposes of the Commission.
 
 
 27
 The district court concluded from the Executive Order and City Ordinance that 'PAAC is an agency of the City, administered by a 'community action board,' rather than a non-profit organization administered by a 'governing board." Having found that PAAC is an agency of the City, the court considered itself bound by federal law to hold that the appointive power lies with the governing official, Mayor Rizzo. Looking to state law, the court noted that the removal power tracks the appointive power.[8] Accordingly, the court held that it was proper for the Mayor to remove Melvin Hardy from office.
 
 II. Jurisdiction
 
 28
 Before evaluating the reasoning of the district court (as outlined above), we find it necessary to discuss, as a threshold issue, the subject matter jurisdiction of the district court. We shall analyze the court's conclusion that jurisdiction vested (to consider all claims raised herein) by treating separately (1) the claim that Mayor Rizzo could not remove Hardy, (2) the peripheral claims raised by PAAC in 73-957, and (3) the removed claims.
 
 A. No. 73-957: The Primary Claim
 
 29
 We agree with the district court that jurisdiction exists under 28 U.S.C. 1331 to consider Hardy's claim that he was illegally discharged.
 
 
 30
 To confer original jurisdiction upon a district court pursuant to 28 U.S.C. 1331, the complainant must assert a claim founded directly upon federal law. Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); Cabana Management, Inc. v. Hyatt Corp., 441 F.2d 862, 864 (5th Cir. 1971). The federal right asserted 'must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.' Gully v. First National Bank, supra, 299 U.S. at 112. Furthermore, the claim must be essential to plaintiff's cause of action, Warrington Sewer Co. v. Tracy, 463 F.2d 771, 772 (3d Cir. 1972) (per curiam), and must raise a substantial federal question, Hagans v. Lavine, 415 U.S. 528, 534-542, 94 S.Ct. 1372, 39 L.Ed.2d 577, (1974). For the claim to be substantial, it need not be one that will ultimately succeed on the merits. See, e.g. Lewis v. American Federation of State, County, and Municipal Employees, AFL-CIO, 407 F.2d 1185, 1188, n.3 (3d Cir.), cert. denied, 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969). Provided that the federal claim is material (and not raised solely for the purposes of obtaining jurisdiction) and is not rendered frivolous by prior case law, a federal question will exist for purposes of 28 U.S.C. 1331. See Bell v. Hood, 327 U.S. 678, 682-683, 66 S.Ct. 773, 90 L.Ed. 939 (1946).
 
 
 31
 In the action filed as No. 73-957, PAAC and Hardy argue that the Economic Opportunity Act (42 U.S.C. 2701 et seq.) and regulations promulgated in furtherance thereof preclude Mayor Rizzo from removing PAAC's Executive Director. Specifically, they contend: (1) that as a condition to recognition of PAAC as a grantee agency, the Office of Economic Opportunity (OEO) required that the removal power remain within PAAC, and (2) that local law cannot supersede terms imposed by the OEO pursuant to federal law.[9] In essence, they claim that Mayor Rizzo's removal of Hardy contravened the Supremacy Clause of the United States Constitution by subordinating a Congressional mandate to local law.
 
 
 32
 We find that such a claim satisfies all the requisites of a substantial federal question. Essential to plaintiff-appellants' case is the claim that federal law (namely, the Economic Opportunity Act) precludes Mayor Rizzo from removing Hardy from office. If we read the Act as PAAC and Hardy would have us read it, we might well be compelled to conclude that the Mayor is without authority to remove Hardy; if, on the other hand, we interpret the Act as irrelevant to the issue of Hardy's removal, we could reach the opposite result. We have been cited to no case law that renders the claim frivolous. Since there is no doubt but that the $10,000 amount in controversy requirement is satisfied, we conclude (as did the district court) that jurisdiction vests pursuant to 28 U.S.C. 1331 to consider the legitimacy of Hardy's discharge.
 
 B. No. 73-957: The Peripheral Claims
 
 33
 As discussed above, the complaint in No. 73-957 charges that the Mayor: (1) illegally blocked appointments to PAAC, (2) illegally appointed persons to PAAC, (3) convened PAAC meetings, and (4) defamed the plaintiffs. With regard to the first three peripheral claims, the theory of illegality is based upon the argument that federal law (namely the Economic Opportunity Act and regulations promulgated in response thereto) prohibits the actions taken by the Mayor. For the reasons discussed above, we find that these claims too raise a substantial federal question.
 
 
 34
 We cannot, however, find an independent jurisdictional basis for plaintiffs' defamation claim.[10] If the district court was correct in exercising jurisdiction of this claim, it could only be so as a result of the court's power to exercise pendent jurisdiction over state claims related to legitimate federal claims. In United Mine Workers of America v. Gibbs,[11] the Supreme Court analyzed this power as follows:
 
 
 35
 Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .,' U.S.Const., Art. III, 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. Levering & Garrigues Co. v. Morrin, 289 U.S. 103 (, 53 S.Ct. 549, 77 L.Ed. 1062). The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.
 
 
 36
 See also Deaktor v. Fox Grocery Co., 475 F.2d 1112, 1115-1116, n.2 (3d Cir.), cert. denied, 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86 (1973).
 
 
 37
 We find that the defamation claim is factually distinct from the claims involving Mayor Rizzo's interference with the operation of PAAC. The defamation claim does not derive from a 'nucleus of operative fact' common with the federal claims. Nor is the defamation claim one which we would 'ordinarily expect' to be tried with the federal claims. Accordingly, we find that the doctrine of pendent jurisdiction is unavailable to justify the district court's consideration of the defamation claim. We hold that the court erred in exercising jurisdiction over same.
 
 
 38
 C. No. 73-990: The Claim Removed from State Court
 
 
 39
 The removal statute, 28 U.S.C. 1441, generally keys removal jurisdiction to original jurisdiction. A case which originally may be brought in federal district court is generally removable upon defendant's petition. Where, as here, removal is predicated upon the assertion of a federal question, the principles discussed above with regard to 1331 jurisdiction are applicable to removal from state courts. See Wright, Law of Federal Courts (2d ed. 1970) at 1304. Most importantly, the federal question must appear as an essential element of the plaintiff's complaint in state court. If the federal question arises only as a defense, or in anticipation of a defense, removal jurisdiction will not exist. See, e.g., Tennessee v. Union and Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894); Crow v. Wyoming Timber Products Co., 424 F.2d 93, 95 (10th Cir. 1970); Romick v. Bekins Van & Storage Co., 197 F.2d 369, 370 (5th Cir. 1952); see also Wright, Law of Federal Courts (2d ed. 1970) at 131 ('Defendant can remove a case where the plaintiff relies on federal law for his claim, though the plaintiff is perfectly willing to entrust his federal claim to a state court, but neither party can take the case to federal court where defendant sets up federal law as a defense to a non-federal claim by plaintiff.')
 
 
 40
 In the action commenced by the City of Philadelphia to restrain Hardy and Crippins from serving as PAAC's Executive Director and General Counsel, plaintiff's complaint is based entirely on state law. According to the complaint, the Mayor's authority to discharge the defendants is predicated solely upon the Philadelphia Home Rule Charter. The federal question in No. 73-990 thus arises only as a defense, Hardy and Crippens asserting that federal law supersedes the Charter and precludes their discharge. Since the federal question does not appear as part of the complaint well-pleaded, the state action is not properly removable, regardless of its similarity with No. 73-957. We find that the district court erred in denying the City's motion to remand No. 73-990.
 
 
 41
 Our analysis discloses that the district court was incorrect in concluding that subject matter jurisdiction exists to consider all claims raised in the consolidated actions. We need discuss the merits of only two sets of claims, the primary assertion that federal law precludes Hardy's discharge and the three peripheral allegations raised in PAAC's complaint (without the defamation claim).
 
 III. The Merits
 A. No. 73-957: The Primary Claim
 
 42
 Appellants assert that it was improper for the district court to focus upon the issue of whether PAAC is administered as a 'governing board' or a 'community action board.' They maintain that the essential structure of PAAC was developed before the adoption of the Green Amendments and has not been altered since. It is appellants' position that early negotiations between PAAC, OEO, and the City of Philadelphia led to the creation of an independent entity whose federally-imposed autonomy cannot be undermined by local law. They assert that:
 
 
 43
 In view of the fact that the Green Amendments did not change the functioning of PAAC, resolution of such questions as who possesses the power to discharge the Executive Director of PAAC must depend on the nature of the arrangements, agreements and understandings reached through negotiations conducted by OEO, PAAC and the City of Philadelphia. A community action agency must be operated in accordance with the terms and conditions attached to the grant of federal funds.
 
 
 44
 Appellants' Brief at 14.
 
 
 45
 Both the district court and the appellants construe the Federal Community Action Program as being mandatory in form. The court predicated its entire opinion upon the assumption that 42 U.S.C. 2790 requires local governments to establish agencies which are administered either by governing boards or community action boards. Appellants, likewise, assume that it is mandatory that PAAC be operated 'in accordance with the terms and conditions attached to the grant of federal funds.'
 
 
 46
 Were we concerned herein with the eligibility of PAAC for federal funding, we, like the district court and appellants, would regard federal law as mandatory. The instant case, however, does not center around federal funding. Rather, we are concerned with identifying the basic structure of PAAC. While the Economic Opportunity Act may strongly influence the structure ultimately developed, it is a matter for local governments to decide whether they will create poverty agencies that satisfy federal guidelines. Contrary to the assumptions made by the district court and by the appellants, there is nothing in the Economic Opportunity Act (or in the regulations promulgated in furtherance thereof) which requires localities to establish community action agencies.[12]An agency which fails to comport with the Act's guidelines is neither illegal nor in contravention of the Supremacy Clause. Rather, it is merely an agency that may be forced to forego federal funding. In short, the Act does not establish powers in local agencies, but rather merely describes the powers that are prerequisites to federal funding.
 
 
 47
 To determine whether the Mayor or PAAC has the authority to remove Melvin Hardy, it is necessary to examine the documents which created PAAC rather than the federal guidelines which may or may not have been followed.[13] Section 3 of the Ordinance creating PAAC gives the Mayor the power to appoint the Executive Director.[14] Under Pennsylvania law, the power to remove an appointed officer is lodged in the same entity that has the power to appoint.[15] We thus agree with the district court's conclusion that Mayor Rizzo has the authority to remove Melvin Hardy from office.
 
 
 48
 B. No. 73-957: The Peripheral Claims (other than the defamation claim)
 
 
 49
 We agree with the district court that plaintiffs failed to satisfy their burden of proving the Mayor's alleged interferences with PAAC. On the basis of the record herein, regardless of the effect of federal law, plaintiff-appellants cannot succeed on their peripheral claims.
 
 
 50
 The judgment entered in favor of the defendants in District Court No. 73-957 will be affirmed with respect to all claims but the defamation claim. The judgment entered in District Court No. 73-957 with respect to the defamation claim and the judgment entered in District Court No. 73-990 will be reversed for want of subject matter jurisdiction. To effect the above dispositions, the entire case will be remanded to the district court for entry of a judgment consistent with this opinion.
 
 
 
 [1]
 It is proper for an appellate court to affirm a correct decision of a lower court even when that decision is based on an inappropriate ground. See Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937)
 
 
 [2]
 The City commenced this second action in the Court of Common Pleas of Philadelphia County
 
 
 [3]
 Although Isaiah Crippins joined PAAC and Hardy in the filing of a notice of appeal, Crippins has not submitted a brief to this Court. We limit our remarks in this opinion to the appellants before us, PAAC and Hardy. As to Crippins, we dismiss his appeal for failure to prosecute. See Fed.R.App.P. 3(a); 9 Moore's Federal Practice P203.12
 
 
 [4]
 To avoid confusion, 'community action boards' are sometimes referred to as 'administering boards' by the Office of Economic Opportunity
 
 
 [5]
 42 U.S.C. 2791(a) provides:
 Each community action agency which is a State or a political subdivision of a State, or a combination of political subdivisions, shall administer its program through a community action board which shall meet the requirements of subsection (b) of this section. Each community action agency which is a public or private nonprofit agency or organization designated by a State or political subdivision of a State, or combination of political subdivisions, or is an agency designated by the Director under section 2790(d) of this title, shall have a governing board which shall meet the requirements of subsection (b) of this section.
 
 
 [6]
 Generally, the term 'governing official' applies to:
 '. . . (a) the governor and legislature of any of the 50 States, the Commonwealth of Puerto Rico, or a self-governing territory, or (b) the top elected or duly appointed officials of a local political subdivision, District of Columbia, or a non-self-governing territory, who collectively possess the power to adopt and carry out local laws or ordinances.'
 OEO Community Action Program Memorandum No. 81, at 2.
 
 
 [7]
 The Order was authorized by Section 3-100(h) of the Philadelphia Home Rule Charter, which provides that the executive and administrative functions of the City shall be performed by 'such additional advisory boards as the Mayor may appoint.'
 
 
 [8]
 See discussion infra
 
 
 [9]
 See Appellant's Brief at 17
 
 
 [10]
 Cf. People Cab Co. v. Bloom, 472 F.2d 163 (3d Cir. 1972) (per curiam); Church v. Hamilton, 444 F.2d 105 (3d Cir. 1971) (per curiam)
 
 
 [11]
 383 U.S. 715, 725, 36 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1906)
 
 
 [12]
 Indeed, Congress has recognized that jurisdictions may be unwilling to establish agencies that conform with the federal guidelines. 42 U.S.C. 2790(d) provides that:
 The Director may designate and provide financial assistance to a public or private nonprofit agency as a community action agency in lieu fo a community action agency designated under subsection (2) of this section for activities of the kind described in this subchapter where he determines (1) that the community action agency serving the community has failed, after having a reasonable opportunity to do so, to submit a satisfactory plan for a community action program which meets the criteria for approval set forth in this subchapter, or to carry out such plan in a satisfactory manner, or (2) that neither the State nor any qualified political subdivision or combination of such subdivisions is willing to be designated as the community action agency for such community or to designate a public or private nonprofit agency or organization to be so designated by the Director.
 
 
 [13]
 We express no opinion as to whether or not PAAC has met the requisite federal guidelines. This issue is not before us
 
 
 [14]
 The Ordinance supra at 7-9 does limit this appointment power somewhat, since the Mayor is free to choose only from a list of candidates selected by PAAC. However, the Mayor's ability to reject these candidates adinfinitum renders the limitation negligible
 
 
 [15]
 Article 6, section 7 of the Pennsylvania Constitution provides:
 Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed.
 The Philadelphia Home Rule Charter is entirely consistent with this constitutional directive, providing in 9-200 that: 'Any appointed officer may be removed at the pleasure of the appointing power.'