<strong>NOT PRECEDENTIAL</strong>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 12-3465
———

STEVEN P. TENGOOD
Appellant

v.

CITY OF PHILADELPHIA, A PENNSYLVANIA MUNICIPAL CORPORATION;
THOMAS M. CONWAY, IN HIS CAPACITY AS AN INDIVIDUAL AND IN HIS
OFFICIAL CAPACITY AS DEPUTY MANAGING DIRECTOR – PHILADELPHIA
MANAGING DIRECTOR'S OFFICE & CO-DIRECTOR OF THE COMMUNITY
LIFE IMPROVEMENT PROGRAM; RYCHARDE SICINSKI, IN HIS CAPACITY AS
AN INDIVIDUAL AND IN HIS OFFICIAL CAPACITY AS A CHIEF CODE
ENFORCER – PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS'
COMMUNITY LIFE IMPROVEMENT PROGRAM, also known as RICK SICINSKI;
MARTIN HIGGINS, IN HIS CAPACITY AS AN INDIVIDUAL AND IN HIS
OFFICIAL CAPACITY AS INSPECTOR – PHILADELPHIA DEPARTMENT OF
LICENSES & INSPECTIONS' COMMUNITY LIFE IMPROVEMENT PROGRAM,
also known as MARTY HIGGINS; ROSEANNE ELIA, IN HER CAPACITY AS AN
INDIVIDUAL AND IN HER OFFICIAL CAPACITY AS AN INSPECTOR –
PHILADELPHIA DEPARTMENT OF LICENSES & INSPECTIONS' COMMUNITY
LIFE IMPROVEMENT PROGRAM; BEVERLY L. PENN, IN HER CAPACITY AS
AN INDIVIDUAL AND IN HER OFFICAL CAPACITY AS DEPUTY CITY
SOLICITOR CODE ENFORCEMENT DIVISION
———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-11-cv-07440)
District Judge: Honorable Juan R. Sanchez
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 11, 2013

Before: SCIRICA, HARDIMAN, and VAN ANTWERPEN, *Circuit Judges*

_____

## OPINION OF THE COURT

_____

VAN ANTWERPEN, *Circuit Judge*.

In December 2011, Steven P. Tengood ("Appellant") filed a thirteen-count Complaint in the District Court for the Eastern District of Pennsylvania, alleging various claims arising under a potpourri of federal and state laws. The district court dismissed some of those claims, entered summary judgment in favor of the defendants on others, and the remaining claims were submitted to a jury in July 2012. The jury returned a verdict in favor of the defendants, and a corresponding judgment followed.

Appellant challenges four actions of the district court below: (1) the entry of summary judgment in favor of the City of Philadelphia on Counts 1 and 2 of the Complaint; (2) the dismissal of several claims arising under 42 U.S.C. § 1983; (3) the district court's management of the docket and discovery; and (4) the exclusion of a related Grand Jury Presentment at trial. For the reasons that follow, we will affirm the district court.

## I. Background

A. *Factual Background*

The events giving rise to this appeal involve the operation of the Community Life Improvement Program ("CLIP"), an organization launched in April 2002 by the City of Philadelphia ("the City"). CLIP's purpose is to facilitate urban renewal and

"beautification" in the Philadelphia region, mainly by enforcing the Philadelphia Property Maintenance Code ("the Code"). CLIP inspectors identify so-called "quality of life" violations—primarily graffiti, vandalism, and property neglect—and inform property owners of their noncompliance with the relevant Code provision. Once notified, violators have twenty days to bring their property into compliance. In the event a property owner does not comply, CLIP is permitted to enter onto the noncompliant property and remedy the violation on its own, subsequently fining the property owner for the cost of the remedy performed. If the property owner neglects to pay that fine, a lien is placed on the relevant property. In extreme situations, property owners are given less than twenty days to comply with the notice of their violations, or, if necessary, are criminally charged and subject to imprisonment.

In 2006, Appellant was notified by CLIP that his property was in violation of the Code. Over the next five years, CLIP inspectors issued citations at Appellant's property for various violations, most involving overgrown vegetation and garbage accumulating on his property. In 2008, after receiving a CLIP citation that required an inspection of the interior of his garage, Appellant obtained legal counsel and appealed his citations to the relevant City administrative body, the Department of Licenses and Inspections Review Board ("the Board"). Before the Board, Appellant testified regarding alleged wrongdoing by the various CLIP inspectors examining his property, which included unauthorized access into the interior of Appellant's home and garage. Nevertheless, the Board upheld the citation. Appellant then appealed the Board's decision to the Philadelphia Court of Common Pleas ("the CCP"). Before the CCP, the City filed a

3

separate suit, seeking a permanent injunction forcing Appellant to maintain his property in compliance with the Code. The CCP granted that injunction in November 2009, which, in addition, required that Appellant submit to a CLIP inspection of his property.

Then, in December 2009, nine CLIP employees were indicted by a Pennsylvania grand jury on felony charges. These individuals, which included defendant Rycharde Sicinski ("Sicinski"), were charged with using their employment at CLIP as a ruse to enter people's homes and steal various personal items. The indictment identified a lack of administrative oversight and poor record keeping as contributing to the success of the criminal scheme.

In January 2010, during the pendency of and pursuant to Appellant's appeal before the CCP, an inspection was conducted on his property. The inspection revealed that all of the citations had been complied with and the Code violations had been remedied. Counsel for both the City and Appellant then withdrew the appeal before the CCP, finding it moot. Correspondingly, the CCP entered an order vacating the previously entered injunction order.[1]

B. *Procedural Background*

Appellant filed a Complaint in the district court in December 2011, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*,

---

[1] A year later, in February 2011, Appellant was again cited by CLIP for trash accumulating on his property. His noncompliance with that citation continued until June 2011, when CLIP personnel entered onto his property to remove the trash. Appellant was charged $128.82 for the CLIP clean-up.

claims under 42 U.S.C. § 1983 for alleged violations of his civil rights, and pendent state law claims for trespass, negligence, invasion of privacy, conversion, and malicious prosecution. These several claims were brought against the City, various CLIP employees, and Beverly Penn, a deputy city solicitor.

In February 2012, the parties served their initial disclosures under Federal Rule of Civil Procedure 26, held a Rule 16 conference, and submitted a joint plan for handling electronic discovery. On February 22, 2012, the district court issued a scheduling order setting April 23, 2012 as the discovery deadline, May 29, 2012 as the deadline for dispositive motions, June 26, 2012 as the deadline for motions in limine, and a trial-ready date of July 16, 2012. After, Appellant made Requests for Production of Documents and Things ("RFPs") seeking, *inter alia*, the City's personnel files for relevant CLIP employees and relevant electronic communications between all defendants. The deadline for responses to the RFPs was set for April 12, 2012. Before the deadline, City-Defendants, here Appellees,[2] informed Appellant that their responses would need more time, certainly time beyond the April 12 RFP deadline and likely time beyond the April 23 general discovery cut-off. City-Defendants offered to enter into a joint request to extend the discovery deadline, but nothing came of this offer.

On April 13, 2012, City-Defendants produced numerous documents in response to the RFPs, which Appellant alleged were incomplete. On May 26 and 27, 2012, Appellant

---

[2] By "City-Defendants," we mean those defendants litigating this case together with the City of Philadelphia; to wit: the City of Philadelphia, Thomas Conway, Martin Higgins, Roseanne Elia, and Beverly Penn. We note here that Defendant Sicinski has not filed a brief to this Court.

made two Motions to Compel Discovery and for Sanctions. The first motion demanded supplemental discovery responses to the RFPs and related sanctions. The second motion demanded an opportunity to depose Defendant Sicinski and related sanctions. Both of these motions were heard via teleconference about three weeks later. The district court issued no formal order, but recommended that the City-Defendants and Defendant Sicinski produce complete responses. On July 9, 2012, City-Defendants provided a timetable for production of the remaining electronic documents still outstanding. These numerous documents were delivered on July 14, 2012, three days before the case went to trial.

In the interim, City-Defendants filed a motion for summary judgment on May 29, 2012. On June 26, 2012, City-Defendants also filed a motion in limine to prohibit introduction of evidence of the Grand Jury Presentment at trial. A late motion for summary judgment was filed by Defendant Sicinski on July 17, 2012, which was denied as untimely.

After a hearing, on July 13, 2012, the district court granted the City-Defendants' motion for summary judgment in part. Relevant here, the district court dismissed Counts 1 and 2 of the Complaint, finding that the City could not be liable for RICO violations; dismissed Counts 5, 6, and 7 of the Complaint, the § 1983 claims against the City, as time barred; denied Appellant's motions to compel discovery and a deposition of Defendant Sicinski; and granted City-Defendants' motion in limine to exclude introduction of evidence of the Grand Jury Presentment. The remainder of Appellant's claims went to

6

trial. The jury returned a verdict in favor of the defendants on all claims. Appellant then filed the current appeal.[3]

## II. Analysis

We exercise plenary review over a district court's entry of summary judgment. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 (3d Cir. 2005). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making our determination, we draw all reasonable factual inferences in favor of Appellant. *See Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511–12 (3d Cir. 1994). We review discovery related matters for abuse of discretion, reversing only where Appellant suffered prejudice in the preparation or presentation of his case. *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817–18 (3d Cir. 1982). Similarly, we review a district court's decision to exclude evidence for abuse of discretion. *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 191 (3d Cir. 1994). We will not reverse a district court on the grounds of an erroneous evidentiary ruling if that error is harmless—that is, if "it is highly probable that the error did not affect the outcome of the case." *Id.*

A.    *Dismissal of Counts 1 & 2: RICO Liability for City-Defendant*

Appellant challenges the district court's entry of summary judgment in favor of the City on Counts 1 and 2 of the Complaint, alleging it was error to conclude that the City cannot be subject to RICO liability. This argument is foreclosed by our decision in

---

[3] The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

*Genty v. Resolution Trust Corp.*, 937 F.2d 899 (3d Cir. 1991), in which we held that a civil RICO claim "cannot be maintained against a municipal corporation" because its mandatory award of treble damages is primarily punitive in nature. *Id*. at 914.[4] Dismissal of Counts 1 and 2 of the Complaint was proper.

B.     *Dismissal of Counts 5, 6 & 7: Statutes of Limitations and § 1983*

Appellant challenges the dismissal of Counts 5, 6, and 7 of the Complaint, alleging it was error to conclude that these several § 1983 claims were time barred. It goes without saying that "claims . . . brought under section 1983 are subject to state statutes of limitations governing personal injury actions." *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003) (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). Similarly sound, personal injury actions in Pennsylvania are subject to a two-year statute of limitations. *See* 42 PA. CONS. STAT. § 5524(7). Appellant does not contest the two-year limitations period applied to him here. Instead, he contests the district court's determination of the relevant accrual date, which he rightly asserts is a question of federal law. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007).

---

[4] Appellant's argument that *Genty* has been abrogated by the Supreme Court's decision in *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003) is unavailing. *PacifiCare* did not address the issue before us—that is, whether RICO claims can be brought against a municipality. Instead, it held that it was ambiguous whether a provision in an arbitration agreement precluding recovery of punitive damages should be interpreted to bar recovery of treble damages under RICO, given RICO's remedial and punitive nature and "the uncertainty surrounding the parties' intent with respect to the contractual term 'punitive.'" *Id*. at 406–07. The Supreme Court remanded for arbitration on whether treble damages for a RICO violation were available under the agreement. *Id*. at 407. Although Appellant is correct that language in *PacifiCare* explains that RICO's mandatory treble damages award is both compensatory and punitive in nature, this fact was recognized in *Genty*, and did not affect our holding in that case. *See Genty*, 937 F.2d at 910. *PacifiCare* thus does not abrogate our decision in *Genty*.

8

Generally, "[u]nder federal law, a cause of action accrues, and the statute of limitations begins to run, 'when the plaintiff knew or should have known of the injury upon which [his] action is based.'" *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (quoting *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)). This is an objective inquiry, whereby a "cause of action accrues even though the full extent of the injury is not then known or predictable." *Id.* at 635 (quoting *Wallace*, 549 U.S. at 391). Accordingly, the clock begins to tick "at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* at 634 (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)).

Appellant's argument here relies on a "delayed accrual" theory discussed in *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156–57 (2d Cir. 1995). There, the Second Circuit opined that

> [s]ince an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's "policy or custom," *see Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county "policy or custom."

*Pinaud*, 52 F.3d at 1157 (alternate reporter citations omitted). Appellant first advocates that we adopt this dicta as an accrual standard in our Circuit. He then asks us to find that he was not on notice of a "policy or custom" giving rise to a *Monell* claim against the City until publication of the Grand Jury Presentment, which related the CLIP criminal scheme to a lack of administrative oversight and poor record keeping. Under that logic,

9

Appellant's clock would not have begun to tick until December 19, 2009, rendering the filing of his Complaint on December 2, 2011 within the relevant limitations period.

But, as rightly identified by Appellant, his argument is "open to scrutiny" on waiver grounds. (*See* Appellant's Brief at 35.) Before the district court, Appellant challenged the time bar against his § 1983 claims under the "continuing violations" doctrine, not a "delayed accrual" theory. (*See* Appendix: Vol. II at A359–66.) Although Appellant attempts to lump these two theories together, the "continuing violations" doctrine is a distinct from the "delayed accrual" theory advanced here. *See Sameric*, 142 F.3d at 599 (discussing "continuing violations" doctrine); *West v. Phila. Elec. Co.*, 45 F.3d 744, 754–55 (3d Cir. 1995) (same). Because "it is well established that failure to raise an issue in the district court constitutes a waiver of the argument," *Belitskus v. Pizzingrilli*, 343 F.3d 632, 645 (3d Cir. 2003) (quoting *Reform Party of Allegheny Cnty. v. Allegheny Cnty. Dep't of Elections*, 174 F.3d 305, 316 (3d Cir. 1999) (alteration omitted)), we decline to address the merits of Appellant's "delayed accrual" argument,[5] and affirm the district court's dismissal of Counts 5, 6, and 7 of the Complaint.

C.      *Discovery Related Issues*

---

[5] There is also no basis in our precedent for applying such a "delayed accrual" theory. *See New Castle Cnty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1125 (3d Cir. 1997) ("The discovery rule does not delay the running of the statute of limitations until a plaintiff is aware of all of the facts necessary to bring its cause of action. Under the discovery rule, a claim accrues upon awareness of *actual injury*, not upon awareness that the injury constitutes a *legal wrong*."); *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994); *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985).

Appellant challenges the district court's management of discovery, primarily its neglect in enforcing discovery obligations and its denial of Appellant's Motions to Compel. Both challenges are meritless.

1. General Discovery Management

It is axiomatic that "matters of docket control and conduct of discovery are committed to the sound discretion of the district court." *Fine Paper*, 685 F.2d at 817. Accordingly, we do not "interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice"; nor do we "upset a district court's conduct of discovery procedures absent a demonstration that the court's action made it impossible to obtain crucial evidence." *Id.* at 817–18 (internal quotation marks omitted). "[I]mplicit in such a showing is proof that more diligent discovery was impossible." *Id.* at 818.

In regards to general discovery management, Appellant first argues that the district court acted unreasonably in constructing a "tight discovery schedule," delaying to hear argument on his Motions to Compel, and failing to issue formal orders with respect to those Motions in a timely manner. He also argues that the district court failed to ensure there was sufficient time for him to properly analyze the electronic documents disclosed by City-Defendants. Appellant alleges these acts, taken together, prohibited him from obtaining crucial and necessary evidence to support his claims.

Upon review of these arguments, and the record as a whole, we cannot say that the district court abused its discretion. The discovery schedule set by the district court was not overly oppressive, and the district court's reluctance to issue formal rulings on

11

Appellant's Motions reflects the district court's willingness to allow the parties to fulfill their discovery obligations without sanction; a concern especially relevant here, where Appellant's discovery requests were incredibly broad and involved archived electronic messages both irksome and expensive to retrieve.

Appellant has also neglected to show how the district court's docket and discovery management made it impossible for him to obtain crucial evidence. That he did not receive full disclosure from City-Defendants of the various electronic documents until a few days before trial is troublesome. But Appellant refused to take his discovery obligations into his own hands. No formal motion was made to continue the trial date, and Appellant never took advantage of City-Defendants' offer to jointly extend the discovery deadline.

Moreover, Appellant has failed to show that any extension of time would have benefited his case. The single piece of evidence he points to in support of his claim is an email updating CLIP officials as to Appellant's Court of Common Pleas proceeding, wherein Defendant Sicinski—the alleged keystone of Appellant's arch connecting the CLIP citations issued to him and the criminal scheme alleged in the Grand Jury Presentment—was copied. In this piece of evidence, we fail to see the implications Appellant alleges; and, in turn, fail to find that the district court made it "impossible to obtain crucial evidence." *Fine Paper*, 685 F.2d at 817–18.

2.    Denial of the Motions to Compel

As previously mentioned, "[w]e apply the abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery, including whether to

affirm the denial of a motion to compel discovery." *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 354 (3d Cir. 2003) (quoting *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1310 (3d Cir. 1995)) (internal quotation mark omitted).  According to Appellant, the denial of his Motions to Compel was an abuse of discretion given the dilatory behavior of defense counsel and his need to depose Defendant Sicinski.

Again, there is nothing in the record that compels us to find that the district court abused its discretion by denying Appellant's Motions to Compel.  There is abundant evidence to support a conclusion that counsel for City-Defendants was not dilatory but, in contrast, simply struggling to comply with Appellant's broad discovery requests.  And, even assuming some bad behavior on the part of counsel for Defendant Sicinski, the fact of the matter is that Appellant withdrew his Motion to Compel against Sicinski.  (*See* Appendix: Vol. II at A484.)  As a result, we find no abuse of discretion with regard to the district court's decision to deny Appellant's Motions to Compel.

D.      *Motion in Limine Regarding the Grand Jury Presentment*

Finally, Appellant challenges the district court's order granting City-Defendants' motion in limine to exclude introduction of evidence relating to the Grand Jury Presentment at trial.  Generally, we review "pre-trial . . . rulings concerning the admission of evidence for an abuse of discretion," and reverse only in the event the error was not harmless. *Glass*, 34 F.3d at 191.  Our review is complicated, however, by the fact that the district court did not specify the ground on which it granted the motion. (*See* Appendix: Vol. II at A491, 498.)  Two grounds were forwarded in City-Defendants' original motion in limine: (1) that the Grand Jury Presentment should be excluded as

13

unfairly prejudicial and confusing under Federal Rule of Evidence 403; and (2) that it should be excluded as hearsay. We can affirm based on either ground. *See PAAC v. Rizzo*, 502 F.2d 306, 308 n.1 (3d Cir. 1974), *cert. denied* 419 U.S. 1108 (1975).

We will affirm on Rule 403 grounds. Under an abuse of discretion review, "[a] ruling excluding evidence under Rule 403 is accorded particular deference, and, provided that the court has explained its ruling or the reasons for its ruling are otherwise apparent from the record, it may not be reversed unless the determination is arbitrary and irrational." *In re Paoli R.R. Yard PCB Litig.*, 113 F.3d 444, 453 (3d Cir. 1997) (citations and internal quotation marks omitted). "That a district court failed to take the opportunity to articulate its balancing *does not* constitute reversible error *per se*; however, it may require that the appellate court do so." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 786 (3d Cir. 1995) (emphasis added).

Assuming the Grand Jury Presentment would have been relevant to Appellant's case, its introduction at trial would have been "unfairly prejudicial, not just prejudicial." *Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 670 (3d Cir. 2002). The Presentment describes a criminal scheme wherein certain CLIP employees would, under the guise of CLIP authority, enter people's homes and steal things. These were horrible crimes. People's homes were effectually looted, resulting in massive thefts of personal property. In some cases, family heirlooms were taken. Stolen guns were resold on the street, one of which was recovered from a murder suspect. Claimed relevant to Appellant's case, the Presentment also pointed a finger at "the supervisors and administrators who allowed these public employees to prey on innocent citizens."

14

Introduction of this evidence surely could have acted to unfairly skew the jury's findings. Defendant Sicinski is the only named defendant in this action alleged of wrongdoing in the Presentment. And when speaking of the lack of oversight, the Presentment neglects to name individuals who shirked their duties, fails to articulate a specific policy of apathy on the part of City supervisors, and speaks with emotionally charged hyperbole. Presentation of this evidence to the jury would have risked a similar charge of the jury's emotions or caused unwarranted confusion. Not taking that risk was well within the district court's discretion, especially where no direct link between the criminal scheme and the City-Defendants existed other than Defendant Sicinski. Moreover, the Presentment contained no evidence linking the CLIP scheme to Appellant's property.

What is more, Appellant was permitted to call Sharon Piper at trial, who was an assistant district attorney involved in the prosecution of the CLIP scheme. (*See* Appendix: Vol. II at A506–11.) Piper testified that Sicinski pled guilty to conspiracy to commit theft, perjury, and official oppression in relation to the CLIP scheme. To that end, Appellant cannot now contest that he was completely unable to present evidence relating to the CLIP criminal scheme, especially as it related to Defendant Sicinski.

At bottom, the district court's conclusion that introduction of the Presentment risked unfairly prejudicing City-Defendants' case was not arbitrary or irrational. We affirm its exclusion under Rule 403.

## III. Conclusion

15

For the foregoing reasons, we affirm the district court's entry of summary judgment as to Counts 1 and 2 of the Complaint; affirm the district court's dismissal of Counts 5, 6, and 7 of the Complaint; affirm the district court's denial of Appellant's Motions to Compel and for Sanctions; and affirm the district court's grant of City-Defendants' motion in limine.