685 F.2d 810
 1982-2 Trade Cases 64,843, 10 Fed. R. Evid. Serv. 1621
 In re FINE PAPER ANTITRUST LITIGATION. (Ten cases)
The STATE OF ALASKA, on its own behalf and on behalf of its
cities, boroughs, and other political subdivisions
v.
BOISE CASCADE CORPORATION, a Delaware Corporation; Champion
International Corporation, A New York Corporation; Crown
Zellerbach Corporation, a Nevada Corporation; Great Northern
Nekoosa Corporation, A Maine Corporation; Hammermill Paper
Company, a Pennsylvania Corporation; International Paper
Company, a New York Corporation; Kimberly Clark Corporation,
a Delaware Corporation; The Mead Corporation, an Ohio
Corporation; Potlatch Corporation, a Delaware Corporation;
Scott Paper Company, a Pennsylvania Corporation; St. Regis
Paper Company, a New York Corporation; Union Camp
Corporation, a Virginia Corporation; Wausau Paper Mills Co.,
a Wisconsin Corporation; Westvaco Corporation, a Delaware
Corporation; Weyerhaeuser Company, a Washington Corporation;
Blake, Moffitt & Towne, Inc., a Division of Saxon
Industries, Inc., a New York Corporation; Western Paper
Company, a Division of Hammermill Paper Company, a
Pennsylvania Corporation; and Zellerbach Paper Company, a
Division of Crown Zellerbach Corporation, a Nevada Corporation.
Appeal of STATE OF ALASKA, in No. 81-2341.
STATE OF COLORADO
v.
BOISE CASCADE CORPORATION, Champion International
Corporation, Crown Zellerbach Corporation, d/b/a Zellerbach
Paper Company, Great Northern Nekoosa Corporation,
Hammermill Paper Company, International Paper Company,
Kimberly Clark Corporation, The Mead Corporation, Potlatch
Corporation, Scott Paper Company, St. Regis Paper
Company, Union Camp Corporation, Wausau Paper Mills Company,
Westvaco Corporation, Weyerhaeuser Company, Butler Paper
Company and Dixon Paper Company.
Appeal of STATE OF COLORADO, in No. 81-2342.
STATE OF WASHINGTON, on behalf of itself and its public entities
v.
BOISE CASCADE CORP., Champion International Corporation,
Hammermill Paper Company, International Paper Company,
Potlatch, Inc., Scott Paper Company, St. Regis Paper
Company, Weyerhaeuser Company, Blake, Moffitt & Towne, Inc.,
a Division of Saxon Industries, Inc., Carpenter-Offutt Paper
Company, Inc. a Division of Unisource Corp., Zellerbach
Paper Company, a Division of Crown Zellerbach Corporation.
Appeal of STATE OF WASHINGTON, in No. 81-2343.
STATE OF MISSOURI
v.
BOISE CASCADE CORPORATION, Champion International
Corporation, Crown Zellerbach Corporation, Great Northern
Nekoosa Corporation, Hammermill Paper Company, International
Paper Company, Kimberly Clark Corporation, The Mead
Corporation, Potlatch Corporation, Scott Paper Company, St.
Regis Paper Company, Union Camp Corporation, Wausau Paper
Mills Company, Westvaco Corporation, Weyerhaeuser Company
Corporation, Butler Paper Company, Graham Paper Company,
Bermingham & Prosser Company, Distribix, Inc. Paper Supply
Company, and Shaughnessy-Kniep-Hawe Paper Company.
Appeal of STATE OF MISSOURI, in No. 81-2344.
The STATE OF OREGON, on its own behalf and on behalf of its
cities, counties, and other political subdivisions,
v.
BOISE CASCADE CORPORATION, Champion International
Corporation, Crown Zellerbach Corporation, Great Northern
Nekoosa Corporation, Hammermill Paper Company, International
Paper Company, Kimberly Clark Corporation, The Mead
Corporation, Potlatch Corporation, Scott Paper Company, St.
Regis Paper Company, Union Camp Corporation, Wausau Paper
Mills Company, Westvaco Corporation, Weyerhaeuser Company,
Blake, Moffitt & Towne, Division of Saxon Industries, Inc.,
Carpenter-Offutt Paper Company, Division of Unisource
Corporation, Western Paper Company, Division of Hammermill
Paper Company, and Zellerbach Paper Company, Division of
Crown Zellerbach Corporation.
Appeal of STATE OF OREGON, in No. 81-2345.
The STATE OF CALIFORNIA, on behalf of itself and all
political subdivisions, public agencies and
districts within the State similarly situated
v.
BOISE CASCADE CORPORATION, Champion International
Corporation, Crown Zellerbach Corporation, Great Northern
Nekoosa Corporation, Hammermill Paper Company, International
Paper Company, Kimberly Clark Corporation, The Mead
Corporation, Potlatch Corporation, Scott Paper Company, St.
Regis Paper Company, Union Camp Corporation, Wausau Paper
Mills Company, Westvaco Corporation, Weyerhaeuser Company,
Butler Paper Company, an affiliate of Great Northern Nekoosa
Corp., J. C. Paper Company, an affiliate of Wausau Paper
Mills Co., Nationwide Papers, Incorporated, a division of
Champion International Corp., Seaboard Paper Company, an
affiliate of Mead Corp., Zellerbach Paper Company, a
division of Crown Zellerbach Corp., Blake, Moffitt &
Towne, a division of Saxon Industries, Inc.,
Carpenter-Offutt Paper Company, a division of Unisource
Corp., Ingram Paper Company and Noland Paper Company
(Carpenter/Offutt Paper Co.).
Appeal of STATE OF CALIFORNIA, in No. 81-2346.
NEBRASKA, STATE OF
v.
BOISE CASCADE CORPORATION, Champion International
Corporation, Great Northern Nekoosa Corporation, Hammermill
Paper Company, International Paper Company, The Mead
Corporation, Potlatch Corporation, Scott Paper Company, St.
Regis Paper Company, Union Camp Corporation, Wausau Paper
Mills Co., Westvaco Corporation, Weyerhaeuser Company, Crown
Zellerbach Corporation, Kimberly Clark and Western Paper
Co., a Division of Hammermill Paper Company.
Appeal of STATE OF NEBRASKA, in No. 81-2347.
STATE OF IOWA, By its Attorney General, Richard C. TURNER
v.
BOISE CASCADE CORP.; Champion International Corporation; The
Mead Corporation; Great Northern Nekoosa Corporation;
Hammermill Paper Company; International Paper Company;
Potlatch Corporation; Scott Paper Company; St. Regis Paper
Company; Union Camp Corporation; Wausau Paper Mills Co.;
Westvaco Corp.; and Weyerhaeuser Company.
Appeal of STATE OF IOWA, in No. 81-2348.
MONTANA, STATE OF
v.
BOISE CASCADE CORP.; Champion International Corp.; Great
Northern Nekoosa Corp.; Hammermill Paper Co.; International
Paper Co.; Mead Corp.; The Potlatch Corp.; Scott Paper Co.;
St. Regis Paper Co.; Union Camp Corp.; Wausau Paper Mills
Co.; Westvaco Corp.; Weyerhaeuser Co.; Crown Zellerbach
Corp.; and Kimberly Clark.
Appeal of STATE OF MONTANA, in No. 81-2349.
STATE OF ARKANSAS
v.
BOISE CASCADE CORPORATION, Champion International
Corporation, Crown Zellerbach Corporation, Great Northern
Nekoosa Corporation, Hammermill Paper Company, International
Paper Company, Kimberly Clark Corporation, The Mead
Corporation, Potlatch Corporation, Scott Paper Company, St.
Regis Paper Company, Union Camp Corporation, Wausau Paper
Mills Company, Westvaco Corporation, Western Paper Company,
Graham Paper Company.
Appeal of STATE OF ARKANSAS, in No. 81-2350.
 Nos. 81-2341 to 81-2350.
 United States Court of Appeals,
Third Circuit.
 Argued June 15, 1982.
Decided July 16, 1982.
 
 Louise E. Ma, Mark E. Ashburn, Asst. Atty. Gen., Anchorage, Alaska, for appellant State of Alaska in No. 81-2341.
 Thomas P. McMahon, Asst. Atty. Gen., Antitrust Unit, Enforcement Section, Dept. of Law, Denver, Colo., for appellant State of Colo. in No. 81-2342.
 John R. Ellis, James Kirkham Johns (Argued), Asst. Atty. Gen., Seattle, Wash., for appellant State of Wash. in Nos. 81-2342 and 81-2343.
 William Newcomb, Asst. Atty. Gen., Jefferson City, Mo., for appellant State of Mo. in No. 81-2344.
 Richard L. Caswell, Antitrust Div., Dept. of Justice, Salem, Or., for appellant State of Or. in No. 81-2345.
 Patricia A. Cutler, Charles M. Kagay, Dept. of Justice, San Francisco, Cal., for appellant State of Cal. in No. 81-2346.
 Dale A. Comer, Dept. of Justice, Lincoln, Neb., for appellant State of Neb. in No. 81-2347.
 John R. Perkins, Antitrust Div., Dept. of Justice, Des Moines, Iowa, for appellant State of Iowa in No. 81-2348.
 Jerome J. Cate, Asst. Atty. Gen., Antitrust Enforcement Bureau, Helena, Mont., for appellant State of Mont. in No. 81-2349.
 Callis L. Childs, Antitrust Div., Asst. Atty. Gen., Little Rock, Ark., for appellant State of Ark. in No. 81-2350.
 Patrick W. Kittredge, Kittredge, Kaufman & Donley, Philadelphia, Pa., Liaison Counsel for all appellees and for The Mead Corp.
 Reed E. Hundt, James R. Asperger, Latham, Watkins & Hills, Washington, D. C., John P. Borgwardt, Boise Cascade Corp., Portland, Or., for appellee Boise Cascade Corp.
 Gordon B. Spivack, Norman H. Seidler, Stephen Hogan, James R. Eiszner, Jr., Lord, Day & Lord, New York City, for appellee Champion Intern. Corp.
 William R. Norfolk, Bruce E. Clark, William H. Knull, III, Martin J. Conlon, Sullivan & Cromwell, New York City, for appellee Crown Zellerbach Corp.
 Richard K. Decker, Michael P. Comiskey, Lord, Bissell & Brook, Chicago, Ill., for appellee Great Northern Nekoosa Corp. and Butler Paper Co.
 Howard Adler, Jr., Marc S. Palay, Gregory J. Vogt, Bergson, Borkland, Margolis & Adler, Washington, D. C., for appellee Hammermill Paper Co.
 Erwin C. Heininger, Ned Robertson, John T. Hundley, Mayer, Brown & Platt, Chicago, Ill., for appellee Intern. Paper Co.
 H. Blair White (Argued), Nathan P. Eimer, Sidley & Austin, Chicago, Ill., for appellee Kimberly-Clark Corp.
 Harold F. Baker, Alan Wiseman, Robert M. Bruskin, Scott E. Flick, Howrey & Simon, Washington, D. C., for appellee The Mead Corp.
 Robert B. Owen, Covington & Burling, Washington, D. C., Norman M. Heisman, James A. Corrodi, Scott Paper Co., Philadelphia, Pa., for appellee Scott Paper Co.
 Stephen C. Neal, Joel G. Chefitz, Kirkland & Ellis, Chicago, Ill., for appellee Weyerhaeuser Co.
 Before ALDISERT, GIBBONS and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 These consolidated appeals present several procedural issues arising from a complex antitrust proceeding. Ten states, plaintiffs below, appeal from judgments entered on a jury verdict in their actions for treble damages alleging a nationwide price-fixing conspiracy in violation of § 1 of the Sherman Act. The defendants did not offer any evidence at trial, but rested at the close of the plaintiffs' case; the jury then found in favor of all defendants. On appeal, the plaintiffs assert numerous procedural errors, generally contending that the district court unduly limited their opportunity to develop and present their case. We are not persuaded that the district court either abused its discretion or erred in its selection, interpretation, or application of the controlling legal precepts, and therefore we will affirm its judgment in all respects.
 
 I.
 
 2
 This case has a complicated procedural history, owing in part to the number of parties. Named as defendants were manufacturers and merchants of "fine paper,"[1] which the states buy in large quantity. Some of the merchants are owned by the mills themselves and some are independent. Beginning in 1977, following the initiation of ultimately inconclusive investigations by the Federal Trade Commission and the United States Department of Justice, several states and private plaintiffs brought a total of 37 individual actions alleging that the mills and merchants had participated in a nationwide price-fixing conspiracy. Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation transferred the cases to the Eastern District of Pennsylvania for coordinated pre-trial proceedings, assigned to Judge Joseph L. McGlynn.[2] In re Fine Paper Antitrust Litigation, 446 F.Supp. 759 (Jud.Pan.Mult.Lit.1978) (per curiam); 453 F.Supp. 118 (Jud.Pan.Mult.Lit.1978) (per curiam).
 
 
 3
 The district court divided the plaintiffs into three groups: a class of private plaintiffs, "minority states," and "majority states." The minority states alleged only a horizontal conspiracy among the mill defendants; the majority states, the present appellants, alleged both a horizontal conspiracy among the mill defendants and vertical conspiracies involving mills and merchants. In addition to certifying a class of private plaintiffs, the court certified each minority state and its respective government entities as a separate plaintiff class,[3] but it refused to do the same for the majority states because the added factor of vertical conspiracy made those actions less susceptible to generalized proof. In re Fine Paper Antitrust Litigation, 82 F.R.D. 143 (E.D.Pa.1979). See Fed.R.Civ.P. 23(b)(3).
 
 
 4
 Following a pre-trial conference on March 7, 1979, the court established discovery deadlines and set a tentative trial date of January 2, 1980. The next few months were occupied with discovery and related motions. On September 27, 1979, plaintiffs asked for an extension of the trial date because of the number of depositions they wished to take, but the court expressed reluctance to deviate from its schedule. At a conference on December 4, 1979, the court rejected plaintiffs' proposal that trial not begin until October 1980, but it rescheduled the trial for the "certified plaintiffs" (the private plaintiffs and the minority states) to September 22, 1980, barring a "nuclear holocaust." The court did not fix a trial date for the majority states, but it established July 3, 1980, as the discovery cut-off date in all of the cases.
 
 
 5
 On January 15, 1980, the court decided it could resolve the litigation more efficiently if trial on the majority states' claims were conducted in advance of the certified plaintiffs' trial. It then set for the majority states a trial date of June 16, 1980, and a revised discovery deadline of May 30. Appellants vehemently protested that they still had 300,000 documents to review and more than 100 depositions to take, and that the court's revised schedule left inadequate time for discovery and trial preparation. The court denied their motion for reconsideration.
 
 
 6
 On January 17, 1980, the court entered an order that all parties would be deemed to have consented to venue and to have waived objections to trial in the Eastern District of Pennsylvania unless they filed written objections. The majority states opposed the proposed transfer.
 
 
 7
 In early June 1980, in contemplation of a June 16 trial, the majority states submitted a 200-page pre-trial memorandum. Defendants moved to dismiss, contending that the memorandum was unacceptable because it presented only conclusory allegations rather than the specific enumeration of facts the court had required. The court did not grant defendants' motion, but it ordered plaintiffs to prepare a memorandum by July 25 "which outlines the case chapter and verse as to each defendant." App. at 2064-65. Plaintiffs moved for a continuance, again complaining that they had not been allowed enough time for discovery. The court stated that the majority states' actions would be tried with or after the certified plaintiffs' trial. It did not modify the discovery schedule, but it did allow some additional depositions.
 
 
 8
 The certified plaintiffs settled their cases shortly before trial. On September 25, 1980, the court announced that the majority states' trial would begin on October 6, 1980-nine months after the tentative trial date and four months after the trial date set on January 15, 1980. Although they had been on notice since January 17, 1980, that the court wished to try the cases itself, the plaintiffs objected that they would have insufficient time to set up a Philadelphia office and to transport their files across the country. The court considered these arguments but concluded that October 6 was a realistic date.
 
 
 9
 On September 29, 1980, over plaintiffs' objections, the district court, pursuant to 28 U.S.C. § 1404(a), formally transferred all of the majority states' cases to the Eastern District of Pennsylvania for trial, which began on October 6, 1980. Following plaintiffs' four-week presentation, which consisted primarily of reading depositions to the jury, the defendants rested without offering any evidence. The jury returned a verdict in favor of all defendants on December 2, 1980.
 
 II.
 
 10
 Appellants present several challenges to the district court's conduct of the trial and the pre-trial proceedings. They argue that the trial court abused its discretion in scheduling the discovery cut-off and trial dates; that it improperly transferred the actions to itself for trial under 28 U.S.C. § 1404(a); that it erred by refusing to admit conditionally the out-of-court statements of alleged co-conspirators; that it erred in entering a partial directed verdict for defendants on claims arising from purchases from independent merchants; that it erred in denying class certification to each of the majority states; that in imposing a discovery sanction it erred in excluding evidence submitted by the state of Arkansas; and that it erred both in ruling that fine paper purchases by state colleges and universities were not state purchases and thereafter in denying plaintiffs' motion to amend their complaints to add those institutions as parties. We consider these contentions seriatim.
 
 III.
 
 11
 Appellants' primary argument is that they were afforded too little time for discovery and trial preparation. Appellants have a heavy burden to bear, however, as matters of docket control and conduct of discovery are committed to the sound discretion of the district court. Business Ass'n of University City v. Landrieu, 660 F.2d 867, 877 (3d Cir. 1981); Borden Co. v. Sylk, 410 F.2d 843, 845 (3d Cir. 1969). We will not interfere with a trial court's control of its docket "except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." Eli Lilly & Co. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1105 (5th Cir. 1972). Similarly, we will not upset a district court's conduct of discovery procedures absent "a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible." Id.
 
 
 12
 We find no abuse of discretion by the district judge in his scheduling of discovery or of the trial. After considering all of appellants' contentions and examining the 16-volume appendix that they have supplied to this court, we are not persuaded that the pre-trial rulings of the district court prejudiced the preparation or presentation of their case. The trial of their antitrust claims followed fifteen months of discovery, including approximately 270 depositions and production of nearly two million documents. The trial commenced four months after conclusion of discovery and one month after the date appellants had earlier set as the date on which they would be ready for trial.[4]
 
 
 13
 When discovery ended on May 30, 1980, the majority states sought a continuance and further discovery. The court allowed them to depose some additional witnesses and, relying on their representation that they would need until September 1 to prepare for trial, advised them that their trial would commence with or after the certified plaintiffs' trial, scheduled for September 22, 1980.
 
 
 14
 Upon settlement of the certified plaintiffs' cases, the court on September 25, 1980, notified appellants that their trial would commence on October 6. Appellants again requested a continuance, but the district court responded:
 
 
 15
 Every time I set a deadline I get the same problem arising from the Majority States. They're never ready. They can't go to trial, the case is going to be prejudiced. The same thing happened in June, the same thing when I asked you to file answers to these interrogatories and you didn't have the time. The same thing happened when I asked you to file your pretrial memorandum. You said you didn't have the time, you needed more time, you wanted to supplement. I gave you time to supplement. It hasn't even been supplemented yet, except for a couple of states. It's just constant.
 
 
 16
 App. at 3970-71. Having reviewed the record, we consider the district court's observations to be accurate. Moreover, we do not share the view expressed by appellants' counsel at oral argument that antitrust cases involving price fixing are generically complex. It has been our experience that the legendary complexity is due largely to the parties' inability or unwillingness to simplify their presentations. Our independent review of the record persuades us that the trial court in this case was firm but fair. It deferred the trial date from January 2 to June 16 to October 6, 1980, and it accommodated appellants' requests whenever feasible. The appellants have not shown that "the court's action made it impossible to obtain crucial evidence"; nor have they made a clear showing that the court's conduct "resulted in actual and substantial prejudice." We find no abuse of discretion.
 
 IV.
 
 17
 Appellants also argue that the district court improperly transferred the cases to the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a) and that it should have sent the cases back to the states' home districts, or alternatively to the Northern District of California, the plaintiffs' preferred forum, for trial.[5] Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The gravamen of appellants' contention is that at the time the states' complaints were filed, venue in the Eastern District would have been improper with respect to some of the defendants. At the time of the transfer, however, those particular defendants had settled and were no longer in the case.
 
 
 18
 Relying on Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), appellants read § 1404(a)'s phrase, "where it might have been brought," to preclude a transfer notwithstanding the prior settlement of all parties as to whom venue in the transferee district would have been improper. Assuming that plaintiffs have sustained the prejudice necessary to assert this venue argument, we do not read Hoffman and § 1404(a) to be so grudging. In Hoffman the defendants themselves requested the transfer, consenting to proceed in a district in which they could have objected to venue at the outset. The Supreme Court held that the power to transfer under § 1404(a) does not depend "upon the wish or waiver of the defendant." 363 U.S. at 343, 80 S.Ct. at 1089. Hoffman thus precludes transfer over a plaintiff's objections to a district in which venue would be improper as to a defendant who remained a party to the action. In this case, by contrast, the defendants as to whom venue in the Eastern District would have been improper were no longer parties at the time of transfer.
 
 
 19
 We agree with the district court that it was not required to confine its venue consideration to the facts as they existed at the time of the complaint. Just as venue defects as to a party whose portion of the action has been severed do not bar transfer of the remainder of the action, Wyndham Associates v. Bintliff, 398 F.2d 614, 618-19 (2d Cir.), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968), a party's settlement of his portion of the action cures any objection to venue in the transferee district with respect to that party. Hess Oil Virgin Islands Corp. v. UOP, Inc., 447 F.Supp. 381 (N.D.Okla.1978). See also 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3845 (1976). At the time of the transfer to the Eastern District, the action "might have been brought" in the Eastern District as to all of the parties remaining in the case. Appellants would have us hold that even if the trial below were otherwise error free, a new trial would be warranted because some of their earlier adversaries-who were no longer parties to the suit at the time trial began-could have objected to venue in the Eastern District had transfer been attempted prior to their settlements. Their reading of § 1404(a) and Hoffman reflects adherence to the tradition of mechanical jurisprudence-following "a maxim or a definition with relentless disregard of consequences to 'a dryly logical extreme,' " Hynes v. New York Cent. R. Co., 231 N.Y. 229, 235, 131 N.E. 898, 900 (1921) (Cardozo, J.). We are disinclined to accept appellants' interpretation, and we hold that the district court did not err.[6]
 
 
 20
 Nor do we conclude that in transferring the actions to itself for trial the district court abused its discretion. Although the district court did not expressly quantify the interest in plaintiffs' convenience, it concluded that plaintiffs' convenience was outweighed by the comparative economy of trying one action in the Eastern District rather than several actions in the states' home districts. Given the complexity of the proceedings, we consider this conclusion to be reasonable. Moreover, we also believe that in an appropriate case the court may properly consider whether judicial efficiency would be served by enabling the judge who has presided over the pre-trial phase of a multi-district proceeding, and thereby has become familiar with the parties and the issues, to try the actions himself rather than to return them to one or more district judges who must acquaint themselves with the cases' complexities.[7] We conclude that the district court neither erred in its interpretation of the law, applicable to transfers under § 1404(a) nor abused its discretion in transferring to itself for trial the proceeding over which it had presided in the pre-trial stage.
 
 V.
 
 21
 Appellants argue next that the district court abused its discretion in not admitting evidence of certain declarations of co-conspirators made during the course and in furtherance of the conspiracy. Appellants appear to present a two-tiered argument relying on Fed.R.Evid. 801(d)(2)(E), United States v. Continental Group, 603 F.2d 444 (3d Cir. 1979), cert. denied, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980), and United States v. Trowery, 542 F.2d 623 (3d Cir. 1976) (per curiam), cert. denied, 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555 (1977). Although the elements of their argument are blurred, they appear to contend that the district court was obligated to determine the competency of the proffered evidence by considering whether plaintiffs had made a sufficient showing that a joint undertaking existed at the time of the statements; and alternatively that even absent such a determination, the court nevertheless was required to admit the evidence conditionally.
 
 
 22
 Evidence of extra-judicial statements made by alleged co-conspirators may be admitted upon the court's finding that there is a sufficient showing of a common enterprise by means of evidence independent of the proffered declaration. Trowery, 542 F.2d at 626-27. Alternatively, the court may admit the hearsay evidence subject to later connection. Continental Group, 603 F.2d at 457. We believe that in this case the district court's refusal to admit the extra-judicial statements included an implicit determination that plaintiffs had not met their burden under Trowery. Cf. Continental Group, 603 F.2d at 457 (finding that government had met its burden under Trowery was implicit in court's denial of defendants' motion to strike). Significantly, appellants do not direct our attention to any independent evidence on which the court might have based a determination of competency.[8] Thus, appellants must rely on their argument that the district court was required to admit the evidence conditionally. In this regard we believe appellants misread Continental Group. In that decision we held that a trial court in its discretion may-not must-admit alleged co-conspirators' declarations under Rule 801(d)(2)(E) subject to later connection. We expressed our concern for the possible prejudice to conspiracy defendants that could result from conditional admission where the competency of the evidence is not thereafter demonstrated, and we stated that conditional admission should be used sparingly. As Chief Judge Seitz wrote for the court
 
 
 23
 This court has recognized that there is a real danger in a conspiracy trial involving numerous defendants that the jury may find a particular defendant guilty merely because of his association with the other defendants. See United States v. American Radiator & Standard Sanitary Corp., (433 F.2d 174, 195 (3d Cir. 1970) ). One aspect of this danger is that the trial judge, after admitting hearsay declarations of alleged co-conspirators subject to later connection, may find at the close of all the evidence that the government has not borne its burden of proving by independent evidence that those declarations were made during the course and in furtherance of a conspiracy joined in by both the defendant and the declarant. Cautionary instructions to the jury might not suffice to cure the resulting prejudice to the defendant.
 
 
 24
 603 F.2d at 456. We find no abuse of discretion in the trial court's exclusion of the out-of-court declarations of alleged co-conspirators in this case.
 
 VI.
 
 25
 Prior to submitting the case to the jury, the trial court granted in part defendants' motion for directed verdict. Finding no proof of a single nationwide conspiracy involving both the mills and the independent merchants, the court barred claims against the mills based on plaintiffs' purchases from independent merchants[9] and permitted only proof relating to the mill and mill-owned merchant defendants.[10] Appellants' primary concern seems not to be the exclusion of their claims based on purchases from the independent merchants, however, but that certain evidence which they argue was probative of their conspiracy claims against the mills and the mill-owned merchants was thereby "excised." Thus, appellants' challenge of the directed verdict has two dimensions: that the directed verdict itself was improperly granted, and that their case against the mills and mill-owned merchants was unfairly prejudiced by their inability to use evidence relating to the independent merchants.
 
 
 26
 They argue first that, notwithstanding the district court's finding, there was a sufficient quantum of evidence relevant to the involvement of the independent merchants to enable a jury to grant relief. They fault the district court for examining each piece of evidence in isolation rather than viewing the evidence in its totality. This, they charge, was "compartmentalizing the proof," in violation of the teachings of Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 698-99, 82 S.Ct. 1404, 1409-10, 8 L.Ed.2d 777 (1962). In Edward J. Sweeney & Sons v. Texaco, Inc., 637 F.2d 105, 115 (3d Cir. 1980), cert. denied, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981), we stated the scope of appellate review applicable to directed verdicts:
 
 
 27
 The appellate court must consider the record as a whole and in the light most favorable to the non-moving party, drawing all reasonable inferences to support its contentions. If no reasonable resolution of the conflicting evidence and inferences therefrom could result in a judgment for the non-moving party, the appellate court must affirm the lower court's decision.
 
 
 28
 Applying this stringent standard of review, we have examined the record and are persuaded that the district court did not err. Plaintiffs alleged a nationwide conspiracy between mills and independent merchants. Viewed in the light most favorable to appellants, the evidence upon which they rely in their challenge to the directed verdict involves only communication among merchants relating to retail prices. Like the district court, we will not permit a jury to infer from communication at a lower level the existence of a conspiracy at a higher level as alleged in the complaints. Submission of this evidence to the jury would have required the jurors to resort to guesswork and conjecture, allowing "mere speculation ... to do duty for probative facts." Edward J. Sweeney & Sons v. Texaco, Inc., 637 F.2d at 115 (quoting Galloway v. United States, 319 U.S. 372, 395, 63 S.Ct. 1077, 1089, 87 L.Ed. 1458 (1943)). Continental Ore does not assist appellants. The "compartmentalizing" condemned by the Supreme Court consisted of a seriatim examination of the claims against each of five conspiracy defendants as if they were separate lawsuits, thereby overlooking the conspiracy claim itself. See 370 U.S. at 698-99, 82 S.Ct. at 1409-10. In the instant case the court refused to submit to the jury evidence which at best was probative of an alleged conspiracy unrelated to the conspiracy whose existence was in issue. We conclude that the district court did not err.
 
 
 29
 Nor can we conclude that appellants were prejudiced by the exclusion of evidence relating to the independent merchants. Notably, appellants do not contest appellees' observations that all of the excluded evidence deals with retail prices and that appellants purchased paper not at retail but only on the basis of bids. We do not perceive any prejudice resulting from the entry of the directed verdict.
 
 VII.
 
 30
 Because of the view we take regarding the contentions discussed above, appellants' remaining arguments require only brief consideration. Again we find no error or abuse of discretion.
 
 
 31
 Noting that the district court certified classes of government entities for each of the minority states, appellants argue that the district court erred in denying similar certification to the majority states. They contend that the only difference between the two groups of plaintiff states was the majority states' allegations of vertical conspiracies among mills and independent merchants, and they argue that this distinction was an insufficient basis for denial of certification. We have said that a decision on class status is normally within the discretion of the trial court, Gardner v. Westinghouse Broadcasting Co., 559 F.2d 209, 212 (3d Cir. 1977), aff'd, 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978), and we now conclude that the district court in this case acted wholly within the bounds of its discretion. One prerequisite to class certification under Fed.R.Civ.P. 23(b)(3) is a determination that common questions of fact or law predominate over questions affecting only individual members. The common issue here, whether there was a horizontal conspiracy among the mill defendants, easily could be overwhelmed by the separate proof required to establish that each individual independent merchant had participated with the mills in an individual vertical conspiracy. Proof as to vertical conspiracy would vary among the class members, depending on the identity of the merchants from whom the respective government entities purchased their paper. Given that appellants sought to include in their classes not only entities which purchased from the named defendants but also those who purchased from an unspecified number of alleged co-conspirators, the likely factual variations among the alleged vertical conspiracies seems to us a reasonable basis for denying certification under Rule 23(b)(3).
 
 
 32
 Appellants also charge that the district court abused its discretion when, as a sanction for failure to comply with a discovery order, it precluded plaintiff Arkansas from introducing evidence of its purchases of fine paper. Some of the defendants had served interrogatories and requests for production of documents on the states, seeking information about the states' purchases of fine paper. The states did not produce the requested information, but, relying on Fed.R.Civ.P. 33(c),[11] responded that the documents containing the relevant information already had been produced and that the defendants could find the information in those documents as easily as plaintiffs could. The court granted defendants' motion under Fed.R.Civ.P. 37(a) to compel answers. Plaintiffs continued to oppose discovery, and the court granted defendants' motion for sanctions but deferred imposition. Subsequently reminded at trial that Arkansas had not completed the interrogatories, the court prohibited Arkansas from introducing evidence relating to its purchases.
 
 
 33
 We have indicated our deference to the trial court's determination of the relative burdens of sifting through documents under Rule 33(c), Al Barnett & Son v. Outboard Marine Corp., 611 F.2d 32 (3d Cir. 1979), and we note that the rule appears to have been drafted in contemplation of the tactic attempted by plaintiffs. By its own terms the rule is unavailable unless "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." Fed.R.Civ.P. 33(c) (as amended 1980). The Advisory Committee on the Rules has noted, "The Committee is advised that parties upon whom interrogatories are served occasionally responded by directing the interrogating party to a mass of business records ... justifying the response by the option provided by this subdivision. Such practices are an abuse of the option." Id. (Notes of Advisory Committee). Appellants have not persuaded us that the district court abused its discretion in applying these precepts. Similarly, we conclude that the district court acted within its discretion in selecting and imposing a sanction. In a proper case the court may dismiss entirely the claim of a party who will not cooperate in discovery. National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). Given the nature of Arkansas' violation, the sanction imposed was appropriate: the evidence excluded bears a direct relation to the evidence sought under the discovery order. Cf. Compagnie des Bauxites de Guinea v. Insurance Co. of North America, 651 F.2d 877, 885 (3d Cir. 1981), aff'd sub nom. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinea, --- U.S. ----, 102 S.Ct. 502, 72 L.Ed.2d 377 (1982) (defendants' failure to respond to requests for information relevant to personal jurisdiction over defendants warrants court's assumption of jurisdiction as a Rule 37(b)(2)(A) sanction). We find no abuse of discretion in the district court's handling of this matter.
 
 
 34
 Appellants' final argument relates to purchase of fine paper by the state colleges and universities of seven of the plaintiff states. Late in the evidentiary phase of plaintiffs' trial presentation, the district court ruled that evidence of fine paper purchases by the colleges and universities would not be admitted because there had been no showing that the institutions were state agencies whose claims could be asserted by the state. The states subsequently sought to amend their complaints to add the institutions as parties plaintiff, but the court denied their motions.
 
 
 35
 Based on our examination of the record, we find no abuse of discretion. The states had provided no evidence from which the court could conclude that the educational institutions' purchases were effectively purchases by the states. Moreover, in view of our disposition of this appeal, even if we were to accept appellants' argument that the institutions are state agencies under relevant state law, failure to allow the damages claims was at worst harmless. As to the court's denial of the states' motion to amend, the complexity of the litigation and the late point in the proceedings at which the motion was presented lead us to find no abuse of discretion in refusing to add more parties to an already complicated proceeding.
 
 VIII.
 
 36
 We have considered all of the contentions presented by the appellants and conclude that there was no abuse of discretion or reversible error.
 
 
 37
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 The district court defined "fine paper" to include
 all printing and writing papers and all paper products into which such papers are converted, including coated and uncoated book, publication (excluding newsprint), printing and converting papers, offset papers, chemical writing papers (bond and writing, form bond, ledger, mimeograph, duplication and related papers), cotton content papers, cover and text papers, thin papers (excluding cigarette, condenser and filter papers), and bristols.
 In re Fine Paper Antitrust Litigation, 82 F.R.D. 143, 147 (E.D.Pa.1979).
 
 
 [2]
 This court previously has considered other issues arising from these proceedings. See In re Fine Paper Litigation State of Washington, 632 F.2d 1081 (3d Cir. 1980) (dismissal of settling defendants; assignment of claims); In re Fine Paper Antitrust Litigation, 617 F.2d 22 (3d Cir. 1980) (disqualification of class attorneys)
 
 
 [3]
 Each of these classes comprised the state and its cities, counties, other political subdivisions, school districts, government universities, and community colleges that had purchased fine paper from defendants
 
 
 [4]
 On June 16, 1980, counsel for appellants explained to the court: "I think we may need to September 1 to accomplish everything ...." App. at 2068 (emphasis added)
 
 
 [5]
 Rule 11(b) of the Judicial Panel on Multidistrict Litigation's Rules of Procedure provides that:
 Each transferred action that has not been terminated in the transferee court shall be remanded by the Panel to the transferor district for trial, unless ordered transferred by the transferee judge to the transferee or other district under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. In the event that the transferee judge transfers an action under 28 U.S.C. §§ 1404(a) or 1406, no further action of the Panel shall be necessary to authorize further proceedings including trial.
 
 
 [6]
 Appellants argue alternatively that at the filing of the complaint, venue would have been improper in the Eastern District as to defendant Butler Paper, a company that did not settle and is one of the present appellees. The district court addressed this contention, however, and specifically found that the case against Butler could have been brought in the Eastern District of Pennsylvania. The court did not state with particularity the reasons underlying its conclusion, but there was evidence in the form of an affidavit from an official of defendant Weyerhaeuser Co. that Butler purchased a large amount of paper from a Weyerhaeuser mill in Eastern Pennsylvania, constituting transaction of business sufficient to establish venue in the Eastern District of Pennsylvania under 15 U.S.C. § 22. We conclude, therefore, that the district court did not err in determining that the transfer was proper as to Butler
 
 
 [7]
 The second circuit considered a similar problem of multi-district litigation in Pfizer, Inc. v. Lord, 447 F.2d 122 (2d Cir. 1971) (per curiam). A district judge who had conducted the pre-trial proceedings while sitting by designation in the Southern District of New York, decided to transfer the actions to his own District of Minnesota for trial. Defendants opposing the transfer petitioned for a writ of mandamus. The court of appeals denied the petition and noted that the judge
 indicated that he felt that because of the complexity of these cases the interests of judicial efficiency made it highly desirable that the judge who conducted the pretrial proceedings continue as the trial judge, and that it would be impossible for him to remain in the Southern District of New York for the length of time that these trials were expected to take. While the convenience of the judge is, of course, not normally a factor to be weighed in considering a section 1404(a) motion, in the unusual circumstances of this case we do not feel that it was an abuse of discretion to give some consideration to this problem in balancing the various interests. In any litigation of this type it would, of course, be impossible to find any forum that was totally convenient to all those involved. Judge Lord's solution appears fully justified under the circumstances.
 Id. at 125.
 
 
 [8]
 For this reason we need not reach appellants' contention that in a civil conspiracy case the plaintiff need make out only a prima facie case of conspiracy as a prerequisite to admission
 
 
 [9]
 Plaintiffs settled their claims against all independent merchant defendants before trial
 
 
 [10]
 The district court stated:
 (T)his record has not established proof of a single unitary nationwide conspiracy, including both the mills and the independent merchants. So to the extent that any of your claims are based upon sales or purchases from independent merchants, including those named as defendants in this case, your claims will not be allowed. Whatever proof will be permitted will be proof (relating to the) mill-owned merchants from whom the individual states brought paper manufactured by the ten mill defendants in this case.
 App. at 4499.
 
 
 [11]
 Rule 33(c) provides:
 Option to Produce Business Records.
 Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records, including a compilation, abstract or summary thereof, and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries. A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.
 (as amended 1980).