NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2125
_____

RAHIEM NOWELL,

                                             Appellant
v.

JOHN A. REILLY, ESQUIRE, SUPERINTENDENT, ET AL;
PHILLIP CARTER, SGT.; MARIO COLUCCI, OFFICER;
DELAWARE COUNTY, PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cv-01569)
District Judge:  Honorable Luis Felipe Restrepo
_____

Submitted Under Third Circuit LAR 34.1(a)
June 20, 2011

Before:  HARDIMAN and ALDISERT, *Circuit Judges*
and RESTANI [*] *Judge*.

(Filed: June 22, 2011)

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

      Rahiem Nowell appeals a summary judgment of the District Court in favor of

_____

      [*]The Honorable Jane A. Restani, Judge of the United States Court of International
Trade, sitting by designation.

Delaware County, Pennsylvania (the County) and John A. Reilly, Superintendent of the George W. Hill Correctional Facility (GWHCF). Nowell also appeals two discovery orders of the District Court. For the reasons that follow, we will affirm.

I

Because we write for the parties, we recount only the essential facts and procedural history.

Nowell alleged claims under 42 U.S.C. § 1983 arising out of his time spent at GWHCF as a pretrial detainee. In addition to his claims against the County and Reilly that form the basis of this appeal, Nowell brought claims against Deputy Warden Mario Colucci and Sergeant Phillip Carter, which were tried to a jury. Because Nowell appeals the summary judgment entered in favor of the County and Reilly, not the judgments in favor of Colucci and Carter, we review the facts in the light most favorable to Nowell.

In January 2008, Nowell was incarcerated at GWHCF while he awaited trial on narcotics charges. At all relevant times, GWHCF was run by The GEO Group, Inc. (GEO), the private contractor hired by the County to administer the prison. On November 3, 2008, after hearing that inmates intended to harm him, Nowell gave a note to Sergeant Carter stating: "I fear for my life and I would like to be moved to another unit. There are people plotting to stab me up, please move me right now, thank you!" When he received no response, Nowell filed two grievances restating his fears on November 4 and November 14, 2008. On November 20, 2008, Nowell's throat was cut by another inmate;

Nowell went to his cell, wrapped a towel around his neck, and was taken by guards for medical attention. Nevertheless, Nowell told the guards and the medical staff that he had suffered a seizure while shaving and had cut himself. He later completed a written statement to that effect.

Nowell was taken from the medical unit at GWHCF to Riddle Memorial Hospital in Media, Pennsylvania, where he was given numerous stitches and prescribed an antibiotic and pain medicine. When he was returned to GWHCF, the prison gave him a different antibiotic and pain medication. On November 24, 2008, Nowell filed two more grievances, one complaining that he had been denied his medication and one complaining that prison officials caused his injury by not moving him from his cell block, despite his requests.

On April 13, 2009, Nowell filed a complaint in the United States District Court for the Eastern District of Pennsylvania. During the discovery period, Nowell repeatedly amended his complaint before filing a third amended complaint on October 1, 2009. Nowell sought $10,300,000 in compensatory damages and $1,000,000 in punitive damages and alleged four violations of his substantive due process rights based on: (1) Defendants' deliberate indifference to his grievances before he was attacked; (2) Defendants' refusal to administer the medication prescribed by the Riddle Memorial Hospital physician; (3) Carter's conduct during the search of Nowell's person on another occasion; and (4) Defendants' failure to fully investigate the circumstances of the attack.

3

Defendants moved for summary judgment, and on November 23, 2009, the District Court granted Reilly's and the County's motions, but denied Colucci's and Carter's motions.

Some five months before the District Court entered summary judgment for Reilly and the County, the Court ordered all fact discovery to be completed by September 11, 2009. Nowell first served interrogatories and requests for production of documents on August 24, 2009, only nineteen days before the close of discovery. On the last day of discovery, Defendants responded to Nowell's request with a general objection based on the tardiness of the interrogatories and requests for production, as well as with specific, albeit boilerplate, objections to each. They provided no documents or answers to interrogatories. Twenty days later, Nowell filed a motion to compel, which the Court denied on October 13, 2009. Nowell then moved to reopen discovery, but that motion was denied on October 30, 2009.

The case proceeded to a jury trial against Carter and Colucci. After the close of Nowell's case-in-chief, the Court granted Colucci's Rule 50 motion, dismissing all counts against him. The jury rendered a verdict in favor of Carter.

Nowell timely appealed the October 13 and October 30, 2009 discovery orders and the summary judgment in favor of the County and Reilly.[1]

II

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Nowell's third amended complaint raised federal questions and alleged civil rights violations. We have jurisdiction under 28 U.S.C. § 1291.

"We review discovery orders under an abuse of discretion standard." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1032 (3d Cir. 1997). When appealing discovery orders, "[a]ppellants have a heavy burden to bear . . . as matters of docket control and conduct of discovery are committed to the sound discretion of the district court." *In re Fine Paper Antitrust Lit.*, 685 F.2d 810, 817 (3d Cir. 1982). "[W]e will not upset a district court's conduct of discovery procedures absent a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible." *Id.* at 818 (internal quotations and citations omitted).

Federal Rule of Civil Procedure 34(b) provides that the "party to whom the [discovery] request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." FED. R. CIV. P. 34(b)(2)(A).

By propounding his discovery requests and interrogatories only nineteen days before the close of discovery, Nowell did not provide Defendants with the thirty days to which they were entitled under Rule 34(b)(2)(A). In his motions to the District Court, Nowell provided no "proof [or even argument] that more diligent discovery was impossible." *In re Fine Paper Antitrust Lit.*, 685 F.2d at 818. Upon receiving Defendants' objections, Nowell waited 20 days before speaking to Defendants' counsel by telephone and learning that Defendants stood by their objections. *See Nowell v. Reilly*,

5

No. 09-1569 (E.D. Pa. Oct. 2, 2009), ECF No. 29 at 3. Only then did Nowell file his motion to compel. Nor did Nowell explain in his motion to reopen discovery—which was filed two weeks after the District Court denied his motion to compel—why he could not have been more diligent. *See Nowell v. Reilly*, No. 09-1569 (E.D. Pa. Oct. 27, 2009), ECF No. 36. On this record, we find no grounds upon which to conclude that the District Court abused its discretion by denying Nowell's discovery motions.

## III

We turn to Nowell's challenge to the District Court's summary judgments in favor of Reilly and the County, which we review *de novo*. *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 322 n.2 (3d Cir. 2005). We "apply the same test required of the district court" and resolve all questions of fact in the light most favorable to the nonmoving party. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).

Nowell claims that the County and Reilly were liable for the allegedly deficient medical care he received (Count 2), and that Reilly was liable as a supervisor for Carter's allegedly inadequate response to Nowell's written warnings of the attack (Counts 1 and 4).[2] Although the District Court did not explain its order granting summary judgment, the entry of summary judgment on these claims is hardly surprising, given the nature of the claims and Nowell's insufficient discovery. The claims all rely on secondary theories of

---

[2] Nowell's complaint is written broadly and could be read to allege violations by all Defendants at every count. Because these are the only claims he presses on appeal, however, all others are waived. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

liability because Nowell does not allege that the County or Reilly directly violated his rights.

Nowell's § 1983 claims against the County arise under *Monell*, which requires proof that his injury was caused by "'action pursuant to official municipal policy[,]'" which "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell v. Dept. of Soc. Svcs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978)); *see also Brown v. City of Pittsburgh*, 586 F.3d 263, 292-93 (3d Cir. 2009).

Nowell argues that the prison physicians were acting pursuant to a County policy or practice not to honor prescriptions written by outside physicians. He relies on the following statement by a prison grievance officer: "The physicians at the jail are under no obligation to honor prescriptions written outside of the jail. You were given a different antibiotic and pain medication." Nowell interprets this to mean that the County policy and practice were to ignore outside prescriptions, which, he argues, is "a complete misstatement of the correct official policy." Nonetheless, he speculates that "the conduct of prison physicians unquestionably represented the edict of Appellee Delaware County." In fact, the evidence adduced at summary judgment shows that the official policy was for prison physicians to consider outside prescriptions and to make independent determinations of prisoners' medical needs. That policy is consistent with both the

7

grievance officer's statement and the treatment that Nowell actually received.  Nowell

provides no evidence to suggest that the prison physicians, the grievance officer, or GEO

were acting pursuant to any other County policy, practice, or "edict."  His speculation that

they were does not raise a question of fact; it is no more than an argument for *respondeat*

*superior* liability, which cannot sustain a claim under *Monell*.  *Monell*, 436 U.S at 691;

*see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).

Nowell's § 1983 claims against Reilly fare no better.  These claims require a

showing that Reilly "participated in violating [Nowell's] rights, or that he directed others

to violate them, or that he, as the person in charge . . . had knowledge of and acquiesced

in his subordinates' violations."  *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010)

(quoting *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).  A "'person' is

not the 'moving force [behind] the constitutional violation' of a subordinate, unless that

'person'—whether a natural one or a municipality—has exhibited deliberate indifference

to the plight of the person deprived."  *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir.

1989) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)) (citation omitted).

As with his claim against the County, Nowell has produced no evidence that Reilly

participated in Nowell's allegedly deficient healthcare, directed others in that care, or

even knew of it.  Nor has he adduced evidence of deliberate indifference or knowledge of

past similar incidents on Reilly's part.  *See Connick*, 131 S. Ct. at 1361.  Nowell's

conclusory allegation that there was a deficient "procedure, applied under the direction of

the Appellee Reilly, the prison superintendent" is insufficient to raise a question of fact and is not enough to establish supervisory liability under § 1983.

Finally, Nowell also failed to raise a question of fact as to Reilly's supervisory liability for Carter's deliberate indifference to Nowell's warnings. Although the jury subsequently found that Carter had not violated Nowell's rights, which would naturally preclude any supervisory liability, on review of summary judgment we must construe the facts in Nowell's favor. *See Groman*, 47 F.3d at 633. Even under that favorable standard, the record is devoid of evidence that Reilly was aware of any warnings before the attack. Thus, Nowell has failed to show that Reilly "participated in violating [Nowell's] rights, or . . . directed others to violate them, or . . . had knowledge of and acquiesced in his subordinates' violations." *Reedy*, 615 F.3d at 231 (quoting *Baker*, 50 F.3d at 1190-91). To the extent that Nowell's argument relies on his claim that Reilly did not sufficiently investigate Nowell's grievance against Carter after the attack, Nowell fails to explain how this amounts to a constitutional violation, and he also fails to adduce any evidence suggesting that any investigation was, in fact, inadequate.

V

For the foregoing reasons, we will affirm the judgment of the District Court in all respects.