**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2061
_____

PKFMARK III INC.; PETER E. GETCHELL; STEPHEN P. NEIDHART;
CRAIG L. KOLBMAN; GLENN A. ELY; MITCHELL BALAND,

Appellants

v.

FOUNDATION FOR FAIR CONTRACTING; THOMAS ST. JOHN; NEW JERSEY
REGIONAL COUNCIL OF CARPENTERS; ROBERT BOYCE, a/k/a Skip, New Jersey
Regional Council of Carpenters; ROBERT TARBY, Local 623 United Brotherhood of
Carpenters and Joiner of America; LOCAL 623; ALBERT G. KROLL; FRANK
SPENCER, New Jersey Regional Council of Carpenters; KEVIN P. MCCABE, New
Jersey Regional Council of Carpenters; FFC ASSOCIATES, LLC
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-08-cv-01452)
District Judge: Hon. Joseph H. Rodriguez
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 8, 2012

BEFORE: SCIRICA, GREENAWAY, JR. and COWEN,  Circuit Judges

(Filed: August 22, 2012)

_____

OPINION
_____

COWEN, Circuit Judge.

Plaintiffs PKF Mark III, Inc. ("PKF"), Peter E. Getchell, Stephen P. Neidhart, Craig L. Kolbman, Glen A. Ely, and Mitchell Baland appeal from the orders of the United States District Court for the District of New Jersey granting the respective motions for summary judgment filed by Defendant Albert G. Kroll, Esquire, Defendants New Jersey Regional Council of Carpenters ("NJRCC"), Local 623 United Brotherhood of Carpenters and Joiners of America, Robert Boyce, Robert Tarby, Frank Spencer, and Kevin P. McCabe, Esquire ("Carpenter Defendants"), and Defendants Foundation for Fair Contracting, LLC, FFC Associates, LLC, and Thomas St. John ("FFC Defendants"). Plaintiffs also challenge the District Court's denial of their motion for an extension of time to complete discovery. We will affirm.

I.

Simply put, the current matter implicates New Jersey's "prevailing wage" requirements. New Jersey law requires contractors working on public construction projects to pay "prevailing wage" rates, which are set forth by the Commissioner of the New Jersey Department of Labor ("DOL") for each craft and trade based on the collective bargaining agreements entered by employers employing a majority of workers in the respective craft or trade subject to such agreements in the relevant locality. See, e.g., N.J. Stat. Ann. §§ 34:11-56.25; 34:11-56.26(9); 34:11-56.28; 34:11-56.30.

PKF is a general contractor engaged in public works projects, and the individual Plaintiffs are all officers and shareholders of this company. Kroll is a former DOL

Commissioner who has represented a number of labor unions affiliated with the building and construction trades, including the NJRCC and Local 623. In turn, the NJRCC is a labor organization, operating through its representatives (Boyce, Spencer, and McCabe, who is also a former DOL Commissioner). Local 623 is another labor organization, represented by Tarby. The FFC, which is owned by St. John, is a non-profit organization that is funded by a number of unions (including the Carpenters union) and that conducts investigations of possible violations of New Jersey's "prevailing wage" laws. In this case, Boyce asked St. John to conduct an investigation of PKF.

After it was contacted by St. John regarding potential "prevailing wage" violations allegedly committed by PKF on the Driscoll Bridge project, the DOL began an investigation. Purportedly believing that the company already had three prior violations, the state agency eventually commenced a debarment proceeding against Plaintiffs. Plaintiffs ultimately prevailed in the debarment proceeding, and PKF was also successful in a labor arbitration arising out of a grievance that it had filed. Plaintiffs then commenced the current action, claiming, in essence, that "Defendants violated the Fifth and Fourteenth Amendment when they acted under color of state law in bringing spurious proceedings against Plaintiffs under New Jersey's Prevailing Wage Laws." PKF Mark III Inc. v. Found. For Fair Contracting, Civil Action No. 08-1452, 2010 WL 5392628, at *1 (D.N.J. Dec. 21, 2010).

Observing that "[t]he 'under color of state law' requirement of 42 U.S.C. § 1983 has been treated identically to the 'state action' requirement of the Fourteenth

3

Amendment,'" id. at *3 (citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)), the District Court proceeded to apply this requirement and to grant the motions for summary judgment filed by Kroll and the Carpenter Defendants. It also denied Plaintiffs' motion for an extension of time to complete discovery. Subsequently, the District Court granted summary judgment in favor of the FCC Defendants based on the same "state action" grounds.

## II.

Plaintiffs argue that the District Court abused its discretion by refusing to extend the time period for discovery even though their own discovery efforts had allegedly been delayed by the DOL's "well documented and concerted effort . . . to ignore Subpoenas and fight every step of discovery."[1] (Appellants' Br. at 12-13.) They go on to assert that, among other things, the DOL's actions—as well as the allegedly "unlimited access" it had provided to Defendants—constituted further support for their claims of an unlawful conspiracy. (Id. at 15.) Given our deferential standard of review, we determine that the District Court committed no reversible error by refusing to permit yet another discovery extension and by disposing of the summary judgment motions on the rather extensive record already before it.[2] See, e.g., In re Fine Paper Antitrust Litig., 685 F.2d 810, 818

---

[1] The District Court possessed subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We review a district court's ruling regarding the scope and conduct of discovery under an abuse of discretion standard. See, e.g., Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995). However, a district court's summary judgment ruling is reviewed under a plenary standard. See, e.g., Monroe v. Beard, 536 F.3d 198, 206 (3d Cir. 2008).

[2] For instance, the District Court appropriately noted that: (1) the subpoena essentially

(3d Cir. 1982) ("[W]e will not upset a district court's conduct of discovery procedures absent 'a demonstration that the court's action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible.'" (citation omitted)).

We also determine that the Defendants were entitled to summary judgment because of Plaintiffs' failure to raise any genuine issues of material fact with respect to the threshold "state action" requirement. Contrary to Plaintiffs' characterizations, the District Court properly applied our approach to the "state action" inquiry, while expressly acknowledging the fact-specific nature of this inquiry. See, e.g., Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009); Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). It accordingly observed that:

> Plaintiffs have not even articulated whether their theory [of state action] is that (1) Defendants exercised powers traditionally the exclusive prerogative of the State; (2) the State and the Defendants act in concert or jointly to deprive Plaintiffs of their rights; (3) the Defendants and the DOL have a symbiotic relationship as joint participants in the unconstitutional activity.

PKF, 2010 WL 5392628, at *7. In turn, we agree that the record clearly established that the DOL retained its ultimate decision-making responsibility, there was no conspiracy to

---

demanded that the DOL produce all of its "prevailing wage" investigation files dating back to January 1, 2002, even if they were unrelated to the parties themselves; (2) Plaintiffs had already obtained five extensions of time before moving for yet another such extension on October 25, 2010 (just a few days prior to the discovery deadline of November 1, 2010); and (3) even though the DOL had already produced numerous documents and, on September 1, 2010, Plaintiffs had been verbally instructed to begin taking depositions, Plaintiffs had still conducted only three depositions as of October 25, 2010.

deprive Plaintiffs of their constitutional rights, and there was no interdependence between Defendants and the DOL.[3]

### III.

For the foregoing reasons, we will affirm the District Court's orders granting Defendants' respective motions for summary judgment and denying Plaintiffs' discovery motion.

---

[3] In its thorough examination of the record, the District Court appropriately indicated that, among other things: (1) Assistant Commissioner for Labor Standards Leonard Katz testified at his deposition that, other than the letters that Kroll wrote after the DOL had already begun its debarment proceeding, he had no contact with the former Commissioner regarding the Driscoll Bridge investigation and debarment proceeding; (2) according to Katz, the Carpenter Defendants (as well as Kroll) had no influence on the decision to seek debarment; (3) Spencer denied ever saying that, if PKF signed a collective bargaining agreement with the Carpenters union, its problems with the DOL would go away, and Getchell himself acknowledged that both Spencer and Kroll were non-committal when he specifically asked whether their problems would go away if they signed; and (4) PKF's own counsel testified that he routinely engaged in conservations with the DOL on his client's behalf.

6